Good morning, your honors. My name is Josh Hicks. I'm with the Nevada Attorney General's Office, and I'm here on behalf of the appellant, the Nevada Secretary of State. This case, as you know, involves an equal protection challenge to a portion of the Nevada Constitution. That portion requires a percentage of signatures on an initiative petition to come from at least 13 of Nevada's 17 counties. I do want to distinguish that there's another rule in the Nevada Constitution that requires 10 percent of the signatures statewide. That's not at issue here, just the 13 out of 17 rule, which — we are not permitted, we don't have jurisdiction to get to the question posed by this case unless there's a case or controversy withstanding. And my concern here is that the initiative seekers did not get the 10 percent statewide, if I understand the facts right. That's correct. And what that means is it wouldn't matter whether the 13-county rule stayed in place or whether we affirm the district court decision striking it. They lose either way. If they lose either way, they can't get any practical relief, and they have no standing. It seems like both sides want us to decide something that makes no difference to this initiative. I don't understand why we should. You're right, Your Honor. This particular petition did not meet the 10 percent, and it did not go on the ballot. The State did not raise — You can't waive standing. You don't have the power, because Federal courts don't have the power to decide something if it's not a case or controversy. The State did not bring up that issue and did not contest it. Do you understand what I just said? Yes. It doesn't matter that you didn't bring it up and didn't contest it. It's a restraint on our power, and it's not in your hands. We looked at this as one of the exceptions to the requirement that this is a case that's capable of repetition. And, in fact, it would be capable of repetition because — Why would it be evading review? It could come up again in another case, but you might have the same problem over and over again if, by the time it gets to the court. Why would it be evading review? Is this something — a lot of election cases just inherently come up at the last minute, so you never have time for them unless you just turn somersaults like we did in that California recall case. But this one, I don't understand why it, although it's capable of repetition, it's also evading review. It sounds as though this, by its nature, proceeds on a more leisurely schedule. The way it can evade review is if that ballot's defeated at the polls, then it becomes moot. There's nothing else to go with. There are three petitions right now that came in the 2006 year, and all of those petitions, the Petitioners ignored them. We have plenty of time if it's — if they get more than 10 percent statewide, but they don't get — they don't get the 13 counties. I'm sorry. I didn't hear the first part. Why couldn't we review it after they got the 10 percent, but before they got the 13 counties? I suppose you could, Your Honor, on another case. Let me ask you this. How many months before the election must they initially qualify for the ballot? Well, this particular initiative was a constitutional initiative. The circulation starts about a year before it needs to be done. The period of time that's important is the qualification period. That's 90 days before the general election. So you'd have 90 days to go to Federal district court, get an injunction, get to us, and get it all done in time for it to get on the ballot. Right. Is that correct? If you filed it at the last day. If you filed it — if you filed it the last day, and you probably wouldn't know until right around the last day. Right. Historically speaking, if you had — Why? If it was popular, why wouldn't you have your signatures long before the 90 days? Traditionally, from our experience, the signatures almost always get turned in right at the end. That just seems to be the way it goes. Has the timing lapsed in this case? The timing for — Could this — could this petition still get on the ballot? Well, actually, this petition, in a different form, is on the ballot this year. This was a — the particular petition here was to amend the Nevada Constitution, and that didn't get enough signatures. But the petitioners went out and circulated another petition to enact a statute, instead of changing the Constitution, that had the same function of legalizing marijuana. And that actually did get enough signatures, and it's going on the ballot. But it's scheduled to go on the ballot this November. So this is — the subject matter of this petition, it issues — Have there been any other challenges to the 13-county rule? Not that I know of. Since Judge Mahan entered his permanent injunction, the State has not enforced the — Oh, the State has just disregarded the 13-county rule. Exactly. And the other petitions that have been coming in have disregarded that. It's just been the overall 10 percent requirement. I guess I still have the same question. This petition that amended the Constitution, is it too late to get it on the ballot, or is it a time run? If — to amend the Constitution to legalize marijuana, it didn't meet the 10 percent. So, yes, it's too late to put it on. That's — I know it didn't meet the 10 percent, but what I'm asking is if it was too late to get it on the ballot. Because — Oh, when Judge Mahan, you mean, entered his order? It could have gone on if it had the signatures. I know that. But, I mean, what I get — let me put it this way. Could there still be an opportunity to get the additional signatures both in the 13 counties and the total? For this particular petition? Yeah. In my opinion, no, there wouldn't be. I think that by Nevada law, you have to do it in that one-year period. And if you don't — You're out. You're out. So, for all intents and — Yeah. For practically speaking, this petition is over with. Yes. So, the only thing that really is — I guess we probably do, as Judge Kleinfeld said, we probably do have to address the standing issue. I — But the state is of the view that — and I think Judge Kleinfeld is correct. I mean, you can't — you can't waive it. But we need to — you might be correct that capable of repetition yet evading review will save the day for the — Yes, Your Honor. That's certainly the way we've looked at it. This is — it's just something that's going to come up again. So, we looked at it as we might as well just get it addressed now. Why does it matter? I mean, they've got — what they want is legalized marijuana. They've got it on the ballot. If it turns out the state wants it, then Nevada will be, well, kind of like Alaska. And the only difference between the way it winds up and the way it would wind up if this passed is whether people are free to smoke marijuana by statute or by the state constitution. What does it matter? Well, for the — Is there a way the feds can get them if they have the resources, which I imagine they don't, and the state can't? Well, for the subject matter, it doesn't really matter. But from an overall election administration enforcement type of perspective that the state's looking at, it does matter how we get a rule — how this 13-county rule comes about. I'm thinking in terms of federal jurisdiction, we're supposed to restrain ourselves to cases and controversies and not just give people opinions willy-nilly. Well, I think in any other case, if it came up, it would also be an equal protection challenge, just like this case based on the Idaho case. I just have one other question along this way. Do they qualify the statute for this coming election? Yes, Your Honor. I gather that — does that require a less — a smaller percentage than 10 percent? No, it doesn't. It's still — Same percentages? Same requirements. It's just a different timing. It's a slightly different timing when you collect the signatures and turn them in. And then a constitutional amendment needs to go to two votes of the people before it can be enacted. I see. So it's just — procedurally, it's just a little bit easier to do a statutory change rather than a constitutional change. Exactly. Yes, that's the case. You know, there's probably — there may be — well, indeed, be an issue here with Standy, but you have about 10 minutes left. Why don't you tell us why this case is not controlled by the Idaho — is it the Idaho coalition case? Yes, Your Honor. The Idaho coalition case, a panel decision from the circuit. And that case took a somewhat similar geographic signature requirement from Idaho and applied a strict scrutiny test to that. We've taken the position that the district court in this panel should be looking at this and need to look at it as a strict scrutiny analysis. Sure. Isn't that what the district court judge did? Yes. Well, he cited to the Idaho coalition case. He probably read it. You think he read it? I'm sure he read it. I'm not going to say that. You think that suggested to him that he might scrutinize it more searchingly? His order, his written order, didn't lay out the strict scrutiny test. It cited the Idaho case almost as a per se ruling. The hearing on the motions before the judge, it seemed like he thought about the strict scrutiny test a little bit more. But it's the Secretary's position that regardless of what the district court judge did, the strict scrutiny test is met here. Has it met? The interest, the compelling state interest in Nevada is different than the compelling state interest that was brought up in Idaho. Nevada has some unique geographic and population features that aren't present in Idaho. And not only that, but the 13-county rule in Nevada, as I stated earlier, is part of the Nevada Constitution. It actually has been part of the Constitution for almost 50 years. It was part of an initiative that was passed and voted on by the majority of the people. So you had the majority of voters in Nevada saying that they wanted this 13-county rule. Now, Idaho, it was a statute. So the Idaho legislature put their geographic disbursement rule into effect. And Nevada is different in a very important way from Idaho in that the vast majority of the population and the registered voters are concentrated in one county, which is Clark County, which is where Las Vegas is located. The other most populous county, it's about 70% of the population, and it's just about 68% of the registered voters, at least in 2002 it was. The other most populous county is Washoe County, which has about 15% of the population. So you've got 85% in these two counties, most of it in one county. Now, Idaho, Idaho's biggest county, Ada County, has about one-third of the population. The problem that you have in Nevada is the potential for one county to completely run the show, to propose the law and to pass it. Now — So you need to dilute the vote of those who live in Las Vegas to make it fair for everybody else. I wouldn't necessarily characterize it as diluting the vote. I would characterize it more as requiring the okay from some other counties. I don't necessarily view the signing of a petition as a vote, although I recognize that the Idaho case did equate the two. You have kind of a problem once you get there with Idaho Coalition. It has this statement in it that an electoral system may not be based on treating unequal counties equally. Now, that was kind of a novel statement. Usually the Equal Protection Clause is directed toward treating people equally, and this one is extending the Equal Protection Clause to counties. That's how Idaho Coalition avoided distinguishing more, because in more you needed the same number of people from a big county or a little one, and in the Idaho case it was percentages, so it really took account of the more lightly populated counties. Right. Once you extend equal protection to counties, which means bigger counties have to count for more than little counties, why isn't it bad under Idaho Coalition not to let Las Vegas run the whole state? Why isn't Las Vegas entitled to run everything under Idaho Coalition? Well, I think about 50 years ago the majority of Nevadans who voted on that put this 13-county rule in effect as kind of a check on letting one county run the show, and I'll give you an example that's come up from this year of why we're already seeing some issues of Clark County doing things that may not necessarily be in the best interest of the rest of the state. There's an initiative petition that qualified this year. It's going on the ballot in November, and it's called the Tax and Spending Control for Nevada, initiative, and like I said, this is just an example, but that petition limits government spending at any level, state, county, city, to a certain formula that includes changes in population and inflation. Now, that might be okay in Clark County, and the voters might think that's great because they're growing. They can have a flexible spending limit, but in some other counties, including rural counties now, you're going to have spending limits essentially frozen if their population is declining or not changing very much. Now, you've got you'll have these differentials in every state. In some western states, it will be agricultural use of water. You just described difference in spending interests and taxing interests according to whether population and economy are expanding or declining. In Alaska, the areas that are mostly Athabascan Indian villages want aerial wolf hunting to kill the wolves because they're competing predators for moose. Anchorage, it's not a very salient issue. Not as many people need moose to fill the freezer. You're going to have this in every state. It looks to me, though, as though you have to tell me why the big urban county that's a majority of the state isn't entitled to run the state its way under Idaho coalition. I think, and I'm not exactly sure how the Alaska population breaks down. Mostly Anchorage and the Anchorage area. Okay. Kind of like Nevada that way. The compelling interest, the Idaho compelling interest was about requiring, they wanted statewide support for things. Our compelling interest goes beyond that to just trying to prevent one county from controlling the whole process, and that's what the voters voted on. And take another example. Say the voters of Clark County decided that they wanted to pass an initiative that 75% of all tax revenue in the state goes to Clark County. They could propose that, they could vote on it, and that could be the law, regardless of how that would cripple everyone else in the state. So that's why when you have one county that can completely control the whole process, you're shutting out everybody else, you're shutting out their voices, and it can cause a serious problem. And that's the difference in the compelling state interest between the Idaho case and the Nevada case. It's that geographic uniqueness. I don't think you understood my question. My question is, show me how, under Idaho coalition, the dominant cities, Las Vegas, Anchorage, San Francisco, and Los Angeles aren't entitled, under the Equal Protection Clause, to cause all kinds of problems for the more rural areas of the state. Well, they certainly can propose a law like that, but if there's a check on it, a state check on it, that check's going to be upheld if there's a compelling state interest. So it's not necessarily that if there was no 13-county rule, I don't know if I could be here saying what Clark County or what this one populous county is doing is wrong because it's hurting the rest of the state, but the state's tried to fix that problem by putting this check on the system in 1958. I hope that answers your question. I'm not sure if I did. I thought when I was reading the district court judge's oral decision that he suggested there were some other alternatives. He did. He could raise the percent. He did. It's more difficult to qualify an initiative. You could use congressional districts or some other regional districts. Yes, Your Honor. He did, but there are problems with those that don't necessarily satisfy the state's interest. Just raising the percentage, well, if you've still got 70 percent in one county, raising it up to 15 to 20 percent, you still can just go to one county and get all the signatures that you need. And we've seen that. Even though we have 10 percent, we've seen what these groups who propose these petitions do. They just go to Clark County now, and that's where they get their signatures. The judge, I believe the district judge, used the term electoral districts. I'm not sure exactly what he meant by that because there are no electoral districts in Nevada. There are congressional districts, there are Senate districts, and there are assembly districts. The problem with using congressional districts, which I think is what the judge was getting at, is that there's three congressional districts in the state of Nevada. Two of those are in Clark County. Actually, all three are part of Clark County. But two are in Clark County, and one is basically the rest of the state, including Washoe County. So if you use congressional districts, you still have the problem where these urban counties, where all the population is concentrated, can effectively silence the will of anyone or the say of anyone in the rural counties. Let me ask one more question. Are any of the petitions that are now pending, do any of those have the problem with regard to the green states, the 13 counties? Your Honor, I believe all of them, all three from this year. I believe would not have met the 13-county rule. Would not have met the? The 13-county rule, yes. The tax and spending control, which I referenced earlier, I know that one would not have met the 13-county rule. And there are two states. Does it have the total number of voters required? Yes, they did. They had the 10 percent statewide, but they basically got all their signatures from Clark County. And that's because the Secretary of State has not applied the 13-county rule following the entry of the injunction. Yes, Your Honor. In this case. That's why those petition gatherers knew that. And they took the path of least resistance by going to Las Vegas to get all their signatures. Why wouldn't that be the appropriate case to take this up? One of those cases certainly could be, but we might just be right back with the same problem if the voters voted it down. It might be the same. We might just have the same problem of evading review again. And I'm not sure at this point, after being under the injunction and telling these petitioners that they didn't have to follow the 13-county rule, if all of a sudden we went in and said, sorry, you're out of luck, you didn't meet the 13-county rule. I know Mr. Brinkerhoff would not be too happy about that. And I think we'd have some serious problems if we did that. Okay. Would there still be time to get the initial signatures for those? By law, the period for collecting those signatures has expired. So without some kind of extension, no, there would not be anything else. I see I'm out of time. Thank you. Thank you, counsel. May it please the Court. My name is Matthew Brinkerhoff, and I represent a number of plaintiffs' appellees in this case. This case is definitely justiciable. I just want to go over who the plaintiffs are in this case. There are three organizational plaintiffs and a number of voter plaintiffs, all from Clark County, whose votes are diluted by the 13-county rule. So why does why shouldn't it be nonjusticiable? Because the 13-county rule doesn't matter to the outcome. They didn't get the 10 percent statewide. If this were not, I think this is a mootness question for what it's worth. There must be other initiatives where they get the 10 percent, but they don't get the 13 counties, and that sounds like the cases that really pose the question. Correct. And, in fact, the Committee to Regulate and Control Marijuana, a plaintiff in this case, the Marijuana Policy Project, a plaintiff in this case, and to a certain degree even the ACLU of Nevada, also a plaintiff in this case, are involved in an initiative that is now, at least at the moment, scheduled to be on the ballot in November. The signatures that were gathered to get that initiative on the ballot satisfied the 10 percent statewide rule, but did not satisfy the 13-county rule. An extremely important distinction here is that the difference between when a case comes up on appeal and an injunction has been denied and here where it's been granted. Hold on. You have another initiative. It satisfies the 10 percent. It does not satisfy the 13 counties. Correct. And the State allows it on the ballot in violation of its own statute. Correct. Because of the injunction, it is allowing it on the ballot. If the injunction were to be lifted or the district court were to be reversed Has anyone asked us to lift it? Well, the problem is that the State is complying with the injunction. So the only person Now, why doesn't that make it move? It doesn't make it move because appealing the injunction. The State is happy to be enjoined from enforcing its 13-county rule and has acceded to non-enforcement. And why isn't this controversy moved? Well, for one, they're obviously continuing to assert the position that the 13-county rule is a constitutional rule. But do they assert it anywhere but in this case? Do they assert it against initiatives that meet the 10 percent requirement but not the 13-county requirement? No, they don't, because they're enjoined from doing so. They did not seek a stay pending appeal. They appealed, but they didn't seek a stay. Correct. They did not seek a stay. They didn't seek a stay from the district court, and they didn't seek a stay from this court. And they probably wouldn't have got one in light of Idaho Coalition. Correct. The reason it is not moved is because it is capable of repetition, and it will evade review otherwise. It's capable of repetition for obvious reasons. When you deal with election cases, as I know the Court is familiar, there was a somewhat recent case actually authored by Judge Paez called Porter v. Jones that explained the reasons why election cases in a duration as short or as long as even 18 months is not sufficiently long to go through the full appellate process and get a decision on the merits. What reason is there to think that the State will enforce the 13-county rule if we were to dismiss this case for lack of standing? They enforced it until there was an injunction. They have fought it every step of the way. The fact that they even appealed, at least substantively, on the merits here, I consider to be somewhat surprising given the state of the law in this circuit. They have an interest and they have an obligation to, meaning the Attorney General, to enforce the Constitution. That constitutional provision exists but for the injunction. If this case is dismissed as moot, that injunction will dissolve. And they will be allowed to and entitled to enforce it again. And there is no reason to believe that they won't. And even if they didn't for some time, they would always have the ability to do so. And it would, if nothing else, would affect Petitioners out there who are going out collecting signatures, would always know that this is a requirement that is not enjoined, has not been declared unconstitutional. Kennedy, you don't stand, though, for all Petitioners on all possible petitions in the future. This, I assume this is one of those George Soros petitions, well-funded, easy for them to seek signatures in all the counties. It's just for the record, it is actually not a George Soros-funded initiative. But in any event, we do stand for two, three organizations that regularly petition in Nevada and rely right now on this injunction. We also represent a number of voter plaintiffs in Clark County who sign petitions, are presented with petitions, and they are entitled to have their signature count with equal weight to everyone else in the State. At the moment, as a result of the injunction, they are. Why on this petition does it matter, since the very same petition is on the ballot, to change the statute rather than the Constitution? So if the State voters want to do what the petition seeks, they're going to be able to do it. Well, not if the injunction is dissolved and they start to enforce the 13-county rule. They will take it off the ballot. The measure that's on the ballot did not follow. Excuse me. Sorry. I'm sorry. I really am. My understanding from opposing counsel was that the petition that, with regard to the statute, did have the 10 percent of the 13 counties. Is that incorrect? That is incorrect. If we're talking about the initiative that will be on the ballot this November to regulate and control the use of marijuana in the State of Nevada, it did not satisfy the 13-county rule. There can be no dispute about that. The statutory one. Excuse me? The statutory one, not the amendment of the Constitution. Correct. So neither of them were satisfied. Correct. And this is, of course, not the only one. Obviously, we are the plaintiffs. It, on some level, is our initiative, although, of course, it's also the people's initiative. It's the petition signers' initiative. It's the residents of Clark County who signed that petition, and fortunately, because of the injunction, had their signature count equally. If the injunction is dissolved, all of that will fall away, and the equal protection violation will begin again. Let me ask you one other question, though, along the same lines. You didn't satisfy the 10 percent requirement with the initiative. Why doesn't that just defeat everything? In this particular case. In this case, with the constitutional amendment. Correct. You didn't get the 10 percent overall. Correct. We obviously had standing when we brought the case. There were three issues. If we had prevailed on all three, we would have been put on the ballot, and we expedited the process as much as possible. In fact, possibly Judge Kleinfeld may remember an emergency request for an appeal of a preliminary injunction that was decided by this Court on the last remaining issue, the only issue that we lost. If we had won that, it would have gone on the ballot. It didn't. And the reason it didn't was because we didn't satisfy the threshold 10 percent number. We're off by about 100 signatures, actually. That's all true. But this issue, there was no reason for us to appeal this issue. The State chose to appeal it. It's a classic case of the mootness exception applying. We know that it wasn't basically the duration did not allow us to get this reviewed on appeal or for the State to get it reviewed on appeal in reality. And we know that it will repeat itself because it already has. So do me a favor and work the timeline for me. It's not he's at your this counsel for the States that it's for the time the petition qualifies to the ballot, it's 90 days. Is that correct? I believe, yes. So you got 90 days. Correct. They declare whether you have qualified for the ballot or not on a constitutional initiative in any event in July of each even-numbered year. And at which point there's a – Usually, which some – Sorry. There's usually some point at which the Secretary of State says, you know, it's just impossible to print the ballots. Correct. Do you know when that date is? Yes. I mean, we ran up against it in the – in this case, actually. It's approximately the third week in September. So basically, the time period would be from July to September. Correct. You have to get all the litigation completed. That's when the absentee ballots get printed, as I understand it. I'm sure the State could give you more specific details about the dates. But there's no question that's the kind of time frame that we're dealing with. Obviously, this is a – the questions and the issues that we're talking about are – go to the jurisdiction of this Court. They can be raised. Obviously, they can't be waived. They have not been raised, however. And if nothing else, I would like the opportunity to brief this issue to the Court I'm quite convinced that I will be able to convince the Court that this is a justiciable controversy and needs to be decided. And because it wasn't raised, obviously, it was not something that we had a chance to brief. You had a chance to brief it. Jurisdiction is part of every brief. You just make a strategic decision. If the other side didn't raise it, I'll lie in the weeds. Everybody has a chance to brief it. Well, certainly, I could have briefed it. I did not believe, and I still do not believe, that the justiciability issue or mootness is – is a problem here, given the nature of the plaintiffs, as I said, and given the nature of the exception to mootness that we've discussed. That's why you didn't brief it. You didn't think it was a problem, and the other side didn't raise it. Correct. But you had a chance to brief it if you thought somebody else might think it was a problem. If I'd been prescient enough, we certainly could have – we certainly had the opportunity to brief it. I was just hoping for the opportunity now that it's been raised, and it seems to be of concern to the Court to – to submit something in writing. Obviously, that's just a request. Well, just now, realizing that there might be more details in the brief, but what are – succinctly, what are your reasons why you feel it is judiciable here and why we have jurisdiction? Okay. On the standing question, we obviously had standing at the time that the case was brought. We continue to have standing, frankly, because we have the possibility of being injured should this injunction be dissolved. On the mootness question, there's no question, I think, that – that this particular case, meaning which concerned one particular initiative that, you know, has already now passed, is moot. But it unquestionably, in my mind, satisfies the exception, the capable-of-repetition- yet-evading-review exception to the mootness doctrine. It satisfies it because it's an election case which is treated differently, just on – as a general matter. Obviously, one of the reasons election cases are treated differently is because of the short time frame. In order to satisfy the capable-of-repetition-yet-evading-review exception, you need to have two things. You need to have a short duration in which to challenge, so short that there isn't the ability to fully litigate the issue on appeal. And you have to have a reasonable expectation that the issue will repeat itself. The duration issue we've discussed. We had approximately three months to get this done. There have been cases, many of them dealing with much longer periods than that, where you have election cycles that come up over and over again. Here, they are two-year cycles. We're on into the next one. This is an issue that is affecting voters and petition signers and petition gatherers right this minute in Nevada, and will continue to unless that – the injunction is affirmed and this particularly – the particular offending portion of the Constitution is declared unconstitutional. Once that happens, then, of course, it will all be over. But as long as that injunction has the possibility of being dissolved, which is what would have to happen if this were dismissed on mootness grounds, then the State will be able to enforce the 13-county rule. They made it very plain that they intend to and desire to enforce the rule. They think it's a good rule. There's no doubt that having statewide support is a legitimate interest on behalf of the State. They can satisfy that interest in any number of ways. But what they can't do is have a percentage requirement or a fixed signature requirement that applies equally to political subdivisions, in this case the counties, that are so dramatically unequal in population. That's what they've done. Idaho Coalition is, I think, quite clear on this point. There's really not a whole lot to argue about on the merits. But it is unquestionably a live, real controversy because that injunction is in place. And if it's dismissed, it will be dissolved. And it will come up again. And the same thing could happen again and again. Kennedy, is there not time for these other petitions? For example, as I understand it, the State statutory provision on the same issue, is there not time to get an injunction on that? I mean, it's July, September. If the case were dissolved, this case – I mean, if the injunction were dissolved and the State sought to take the current marijuana initiative off the ballot this November, we would have approximately six weeks to seek an injunction to get it put back on in the district court and whatever kind of expedited review we could get in this court. If we prevailed, it would go on the ballot. And if we were unable to get appellate review and the State continued to resist the – continued to enforce the 13-county rule just the way they have done here, then we would be before – we would be before this Court again in a year or two or whatever it would be, and we'd be answering this – asking – I'm sorry, answering the same questions. The question would be, you got it on the ballot. It was voted up or down. Isn't it now moot? And we would say, yes, it's moot, but it satisfies the exception to the mootness doctrine. That will happen over and over again unless we get a ruling. Kennedy. Well, unless you get 51 percent, then if you get the – if you get the required total State vote, which you have on some of these other petitions, there's still six weeks ahead of time. And in other petitions, there would be more than that to get – to bring in action for an injunction. I don't see why it can't be reviewed in time. The problem is it's difficult to imagine a situation where it will be reviewed, if you – at least from my perspective. Idaho coalition is very clear. I think it obviously controls. Hard to imagine a district judge in Nevada who will not apply it to the 13-county rule. If that happens, then an injunction will issue, and an initiative will be put on the ballot. It will be voted up or down, and by the time it's reviewed by this circuit, if the they have to date and have shown no indication of doing otherwise, it will be moot in the same way this is moot now. I think what you just said is Idaho coalition is clear enough so that any time, any petition where you get your 10 percent, but you don't satisfy the 13-county rule, you're going to be able to get an injunction from a federal district judge if the State doesn't voluntarily yield even without one, and you're going to be able to get your initiative on the ballot. The only time you're going to have any trouble is when you not only miss the 13- county rule, which either through State concession or easily obtained injunction is not going to be applied anyway. The only time you're not going to get your initiative on the ballot is when you fail to meet the 10 percent requirement, which is unchallenged. I actually believe that that's correct, but then the question becomes — And it's not capable of repetition yet evading review. The only party that would really have a claim that they have a constitutional claim that's capable of repetition yet evading review would be the State of Nevada, your adversary. They say, we're going to lose every time. We're never going to be able to keep something off the ballot for failure to meet the 13-county rule because of the Idaho coalition case. And we're not parties to that. It came and went long before we got involved. Nothing we can do about it. Right. Listen, the exception to the mootness doctrine is obviously a judicially created exception, and it's an exception that exists so that things can be reviewed that otherwise would not be. And I certainly take your point, Judge Kleinfeld, that in most circumstances, one would imagine that an injunction will issue at the district court level, and the only time — I understand all of that. But then the question becomes, why is it that every time the Committee to Regulate and Control Marijuana or any of the other associational plaintiffs here or any of the voters who are signing these petitions want to put an initiative on the ballot, the only way that they are able to do that, if they're not satisfying the 13-county requirement, which they shouldn't have to, it's quite plainly unconstitutional, is to go to court and seek an injunction. That cannot be that that is the answer to the justiciability issue here. The whole point — It sort of depends, too, on your assumption that it couldn't get reviewed here. If it's reviewed here and a ruling is made, that's the law of the case. Right. That's sort of the mirror image, though, of what Judge Kleinfeld was just saying. If things go the way we are discussing and speculating, I think with good reason, then there will never be a need to have it reviewed here. You could get your review here under your analysis at motions and screening. It would be up and down in a couple of weeks because the case would be controlled by Idaho Coalition. So we wouldn't need regular full panel review. That's true. But somebody would have to appeal it for it to be reviewed. And the only person who would be — The State would appeal. The State would appeal. But note what the State did here. We filed — And knowing all that, the State would probably just concede in the first place, and you wouldn't even have to get your injunction. Well, look what the State did here. The State did not seek expedited review of Judge Mann's ruling on this point. We did on another point. They could have easily cross-appealed. It would have been determined by this Court at that time on an expedited basis, as the other issue was. But they have to file the expedited appeal. It's all up to the State. Everything is backwards here because we're dealing with a situation where the injunction has issued and always will. You're talking about court proceedings, and I'm talking about people getting to vote on initiatives. So we're at a little bit of cross-purposes. What I'm thinking is, as long as you get your 10 percent, you're going to get your initiatives on the ballot in Nevada. And the 13-county rule just isn't going to matter, as you've laid out the law in a reasonable way. You know, it might be arguable, but it's reasonable. It sounds to me as though the only way the State has much of a prayer of getting your initiatives off the ballot when they're Las Vegas initiatives that nobody else in the State wants is by amending their Constitution and making it a State Senate district rule instead of a 13-county rule. Have I got something wrong there? No, I agree with all of that. I don't think it solves this particular issue, nonetheless, because, again, I understand why I'm talking about cases, but these are plaintiffs who should be entitled under the Equal Protection Clause to go through this process without having to resort to court on every single occasion. It can't be that the capable of repetition, yet evading review doctrine was created only for circumstances where injunctions are denied, but not when they are granted, as they were here. What you have is the State. The State is protecting this in a — I mean, I'm not saying it's intentional at all, but if they never seek expedited review and they always continue to challenge — they didn't have to file appeal, of course, and, in fact, we had litigation on this, the — Why couldn't you seek expedited review? If, in — for instance, in the case — They have to appeal within a particular time, a very short time, so why — why couldn't you seek expedited review for a very good reason? Certainly, if there were a district judge that denied our request for an injunction to enjoin the 13-county rule, we would seek expedited review, as would, I think, any petition proponent, but — No, it's granted. It's granted. The State appeals, and at a very short time within which they either have to appeal it or not. If they don't appeal it, it's the law. If — if they do appeal it, I can't see any reason why you couldn't seek expedited review before this Court. That's a — that's a good point. I think that that's correct. But look at the timing in this case. Here, the district judge's opinion issued on August 20th. We filed an immediate appeal the next day. The state did not file its notice of appeal, nor was it required to, until 30 days later on September 20th, at which point the time for getting on the ballot or not had passed. And so we would then be in the position of seeking expedited — I mean, it's a very unusual position. We'd be seeking expedited review in order to confirm, essentially, a decision by the district judge that is not in any way injuring us, and then we will be told we have no standing and they'll be right. We're not being injured. What is — what is the controversy there? That's why this is a classic case of the mootness exception applying. Roberts. Thank you, counsel. Your Honors, I know I'm out of time, but I'm not going to present argument. I just wanted to clear up one factual question. The last day to print the sample ballots is August 15th. I couldn't hear you. The last day to print out the sample ballots with the questions in there is August 15th. Right. First — August 15th. The Secretary of State needs ample time in order to get this all accomplished. Yes. There's an orderly — is that by statute, by the way, or by regulation? The statute actually has the time frame when the signatures need to be turned in, which is early August, and then they need to go to the — it's just implicit that — Do you have the particular Nevada Code statute provision? I can get it for you. Would you just leave it with the clerk? I'll do that. Thank you. Thank you, counsel. ACLU v. Heller is submitted.
judges: Hug, Kleinfeld, Paez